SILBAR, Respondent, vs. RYDER, Appellant.

*April 1 — April 28, 1885.*

LANDLORD AND TENANT: EQUITY. *(1) Reformation of lease: Mistake of scrivener. (2) Negligence: Failure to read lease. (3) Waiver.*

1. A lease which, by reason of the ignorance and mistake of the scrivener, fails to conform to the oral agreement made by the parties, will be reformed if the evidence clearly shows what that agreement was.
2. The omission of the lessee (who could read English very imperfectly and who relied upon the scrivener) to read the instrument before executing it, will not defeat his right to a reformation.
3. Nor will his continued possession and payment of rent after the time when, according to the oral agreement, repairs were to have been made, in expectation that they would be made, operate as a waiver of the agreement in that respect.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an action brought by a tenant to reform a three years' lease of a store building in the city of Milwaukee. On the trial the defendant objected to the admission of any evidence under the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The objection was overruled and after a trial by the court judgment was rendered for the plaintiff for the relief demanded. The defendant appealed. Other facts sufficiently appear from the opinion.

For the appellant there were briefs by *Rogers & Mann*, attorneys, and *E. P. Smith*, of counsel, and oral argument by *Mr. Smith*. They argued, *inter alia*, that the complaint was insufficient in that there was no imputation of fraud or of a *mutual* mistake. *Story v. Conger*, 36 N. Y. 676; *Nevins v. Dunlap*, 33 id. 680; *Lyman v. United Ins. Co.* 17 Johns. 373; *Mills v. Lewis*, 55 Barb. 179; *Paine v. Jones*, 75 N. Y. 593; *Welles v. Yates*, 44 id. 525; *Stettheimer v. Killip*, 75 id. 282; *Dambmann v. Schulting*, id. 55; *Argus Co. v. Mayor*,

55 id. 496; *Wells v. Ogden*, 30 Wis. 637; *McClellan v. Sanford*, 26 id. 595; *Sable v. Maloney*, 48 id. 331; *Belt v. Mehen*, 56 Am. Dec. 329, and note; 2 Cal. 159; 44 Ind. 448; 41 id. 374; *Hooker v. Hyde*, 61 Wis. 204.   The plaintiff is not entitled to the relief demanded for the reason that the mistake, if any, was caused by his own negligence in failing to read the lease or have it read to him before executing it.   *Conner v. Welch*, 51 Wis. 431; *Roach v. Karr*, 18 Kan. 529; *S. C.* 26 Am. Rep. 788; *Hallenbeck v. Dewitt*, 2 Johns. 404; *Williams v. Stoll*, 79 Ind. 80; *S. C.* 41 Am. Rep. 604; *Kukland v. Dinsmore*, 62 N. Y. 171; *Hill v. S., B. & N. Y. R. Co.* 73 id. 352; *Armstrong v. G. T. R. Co.* 18 Am. L. Reg. (N. S.), 445; *Fuller v. M. M. Ins. Co.* 36 Wis. 603; *Sanger v. Dun*, 47 id. 619; *Greenfield's Estate*, 14 Pa. St. 489; *Pennsylvania R. Co. v. Shay*, 82 id. 202; *Fisher v. Von Behren*, 70 Ind. 19; 36 Am. Rep. 162, and note; *Douglass v. Matting*, 29 Iowa, 498; 4 Am. Rep. 238; *Chapman v. Rose*, 56 N. Y. 137.   Having retained possession after he claims the repairs should have been made, the plaintiff must be held to have waived the conditions of the agreement as to repairs.   Wood on L. & T. 816; *Wright v. Lattin*, 38 Ill. 293; *Booth v. Ryan*, 31 Wis. 45; *Lunn v. Gage*, 37 Ill. 19. The parol contract being void under the statute of frauds, the lease could not be reformed so as to give effect to it. 2 Parsons on Cont. 566; *Petesch v. Hambach*, 48 Wis. 443; *Eaton v. Eaton*, 15 id. 259.

*Winfield Smith*, for the respondent.

Cole, C. J.   The objection that the complaint does not state facts sufficient to call for a reformation of the lease, we deem untenable.   It is alleged in explicit language that the plaintiff and defendant agreed upon certain repairs and improvements which were to be made on the demised premises, as a condition to the plaintiff's accepting a new lease and paying the increased rent.   It is then alleged that it

was agreed that a written lease should be drawn by John Ryder, the husband of the defendant, which should embody all the terms of the oral agreement; that said Ryder undertook to draw the lease, and did draw an instrument, a copy of which is annexed to the complaint. It is further stated that Ryder did not possess the necessary skill and education to draw the lease in a proper manner, and failed to embody therein the terms and stipulations as to repairs which had been agreed upon by the parties; that the plaintiff and defendant, supposing the written lease was sufficient, executed the same.

From these averments it appears that the scrivener who undertook to draw the lease, on account of his ignorance, and by his mistake, omitted to insert the provision as to repairs and improvements which the parties had agreed upon, and which ought to have been embodied therein. As a consequence, the written instrument did not conform to the actual agreement which the parties had made upon the subject. Now it is rudimentary law that a court of equity will correct such a mistake, and reform the instrument, where the evidence clearly shows what the real agreement was. Indeed, our system of jurisprudence would be sadly defective if it did not afford a way to correct and reform an instrument which, owing to the mistake of the scrivener who undertook to reduce the prior agreement to a written form, failed to express or set forth the terms of the contract which the parties had actually made. But the power has been frequently exercised by courts of equity, in such a case, to correct a written instrument so that it shall truly represent the real contract which the parties made and verbally agreed upon. Mr. Pomeroy says that the doctrine is firmly settled as one of the elementary principles of the equitable jurisdiction of a court of equity, that it will grant relief from the consequences of any mistake of fact which is a material element of the transaction. And under this

head he states the case which arises after the parties have verbally concluded their agreement in reducing that agreement to writing by erroneously adding, omitting, or altering some provision of the contract. Pomeroy's Eq. Jur. sec. 852 *et seq.;* Story's Eq. Jur. ch. 5; Kerr on Fraud, ch. 5. Of course, a court of equity will not reform an instrument for a mistake or omission in reducing it to writing, unless such mistake is clearly shown by satisfactory evidence. *Harter v. Christoph,* 32 Wis. 245. But if the mistake is shown, it will be corrected. *Green Bay & M. Canal Co. v. Hewitt,* 62 Wis. 316, is a strong case upon this point.

The burden of the argument in this court on the part of the defendant was, however, mainly directed to the position that plaintiff had failed to establish the mistake or omission in drawing the lease by that clear and convincing proof which justified a court in correcting the instrument; or, if the mistake were shown by the proper degree of proof, that the plaintiff had been guilty of such negligence as should bar all equitable relief. The learned circuit court found as facts that the scrivener who undertook to draw the lease omitted by mistake to insert therein the material provisions as to repairs which the parties had verbally agreed upon. Under the decisions of this court this finding cannot be reversed or set aside unless it is against the clear weight of testimony. Now a bare reading of the bill of exceptions will convince any impartial mind that the finding is not only sustained by the great preponderance of evidence upon the point, but by all the probabilities surrounding the transaction. That the premises were in a bad condition, and needed repairs to make them tenantable, is a fact shown by the most irrefragable evidence. The nature of the repairs and improvements necessary to be made were not such as a tenant who was to occupy the premises for only three years would be likely to make at his own expense.

It is true, the plaintiff had made ordinary repairs as they

were needed during the term which would expire on the 1st of April, 1882. But putting in suitable pipes for the introduction of water; making a drain to draw off the water which accumulated in the cellar; providing other suitable arrangements for carrying off waste water from the kitchen to the Main-street sewer; putting in a new front to the first story of the building, including doors and windows suitable for the exhibition of merchandise,— these were such repairs or improvements as tenants for a short term do not usually make. And the probability that the plaintiff agreed to make such repairs at his own expense is greatly lessened by the fact that the rent was increased. But that the defendant verbally agreed to make such repairs and improvements does not wholly rest in probabilities and inferences. There is direct and positive evidence that she did make such an agreement to induce the plaintiff to take another lease. True, the defendant denies making any such verbal agreement about repairs, but her words and conduct most effectually overcome the force of that denial. She told a number of witnesses that she had agreed to make repairs, and should do as she agreed. She talked with carpenters about putting in a new kitchen floor, sent them to measure windows for new sash, and actually sent one to put in front doors. That she said and did these things is a fact proven beyond all doubt or controversy. Of course, such conduct is utterly inconsistent with the claim she now makes that the plaintiff himself was to make the repairs, and that she did not agree to make them. Then there is the clause which was inserted in the lease after or when it was signed, reading: "Privilege of hydrant water; and repairing such as is necessary,— such as windows and doors." It matters not at whose instance this clause was inserted, or when it was inserted. True it is, it was put in the lease by the brother of the plaintiff, with the full knowledge and consent of the defendant. Why was it inserted, unless there had been

some previous agreement as to repairs which was not set forth in the lease as drawn by Ryder? We fully agree with the plaintiff's counsel that there is but one rational explanation for putting this clause in the lease, namely, to make the instrument conform to the actual agreement of the parties in respect to the repairs. Ignorant as the parties were, they had sense enough to understand that the lease, as drawn, did not express their intention on that point; that something further should be added relating to the making of repairs. It is unreasonable and absurd to suppose that such a clause would have been inserted had there not been some prior agreement that the defendant was to make them. But it is not our purpose to discuss the evidence. We shall content ourselves with stating the conclusion we have reached in respect to it, which is that in our judgment it establishes the fact of the mistake or omission in the lease beyond all reasonable doubt. In other words, it makes a case for relief.

But it is said the plaintiff was chargeable with negligence in failing to read or understand the lease when he executed it. The court below found that neither the plaintiff nor defendant understood the terms or effect of the instrument, but executed it supposing it to contain the verbal agreement which they had made about repairs. There is abundant testimony to sustain that finding. The parties are ignorant, especially the plaintiff, who can only read the English language imperfectly. He had confidence in Ryder, and supposed, when he executed the lease, that it properly expressed the verbal agreement which had been made about repairs. This is very plain from the testimony. He did not find out to the contrary until shortly before this action was commenced to reform the lease. "Indeed, in most of the cases to be found in the books, where relief has been sought against written instruments on the ground of fraud or mistake, the complaining parties were chargeable with the same

kind of negligence which exists in this case, to wit, the omission to read or understand the contents of instruments executed or accepted." *Albany City Sav. Inst. v. Burdick,* 87 N. Y. 40–46.

These remarks of the learned court of New York are quite appropriate to this case. The plaintiff states the facts attending the execution of the lease. That he did not fully know its contents when he executed it should not bar his right to have the instrument reformed and the mistake corrected. Some comment was made because he continued in possession of the demised premises long after the repairs, according to the agreement, should have been made. But this cannot be deemed any waiver of the stipulations of the contract. It is not strange that he did continue in possession for some time, and even pay rent, because he was expecting the defendant would perform her contract and make the necessary repairs. But his negligence in failing to understand the lease when he executed it, and his delay in abandoning the premises, are explained and fully excused.

In any view of the case we think the judgment of the circuit court is correct, and must be affirmed.

*By the Court.*— Judgment affirmed.