FOTHERINGHAM, Appellant, v. LOCKHART, Respondent.

(138 N. W. 804.)

1. Pleadings—Amending Answer—Reformation of Instrument—Judicial Discretion.

In replevin, where defendant answered that the property was his by exchange with plaintiff, and trial court ruled out conversations and matters leading up to written contract, held, proper to allow defendant to amend answer to show that plaintiff understood that the property in question was included in said contract, that he acted in bad faith knowing that the instrument as drawn did not express the contract between them, and that plaintiff practiced fraud, and praying for reformation of contract; such amendment being within discretion of court.

2. **Exchange of Properties—Sufficiency of Evidence—Findings and Conclusions—Bad Faith—Reformation of Contract.**

In claim and delivery, held, the evidence sustains the findings and conclusions of law thereon, concerning the real contract, that the writing did not embrace such contract, that plaintiff acted in bad faith, and that the contract should be reformed.

3. **Reformation of Instrument—Mistake, and Fraud—Unilateral Mistake—Sufficiency of Evidence.**

A contract is reformable when by mistake of one party and fraud of the other there is omitted therefrom property which it was agreed should be transferred thereby; and such a case is not that of a unilateral mistake which equity will not relieve from. Held, further, the evidence shows such mistake and such fraud, entitling defendant to a reformation.

4. **Claim and Delivery—Possession of Defendant.**

Replevin will not lie where defendant was not in actual or constructive possession of the property involved, when suit was begun.

(Opinion filed December 3, 1912.)

Action in claim and delivery by Thomas W. Fotheringham against Frank M. Lockhart. From a judgment on a special verdict and findings by the trial court, plaintiff appeals. Affirmed.

*Walker & Gurley*, for Appellant.

Appellant respectfully contends that the proposed showing was insufficient to entitle defendant to the relief asked, viz., permission to amend his answer by setting up facts, or purported facts, upon which to ask for a reformation of the written instrument, for the reasons hereinbefore stated. In this connection it will be noted that defendant's showing was of a mistake on the part of himself alone, and on these facts he sought a reformation of the contract. This showing was not sufficient. "A court of equity can reform an instrument only for the purpose of having it express the understanding and agreement of the parties. Hence the mistake must be mutual. Ward v. Yorba, 123 Cal. 447, 56 Pac. 58.

A written contract cannot be reformed so as to express stipulations which were not assented to by the parties, even though one of the parties intended to have it made a part of the contract. Tyson v. Chestnut, 100 Ala. 571, 13 South. 763; Loftus v. Fischer, 106 Cal. 616, 39 Pac. 1064; Williams v. Hamilton, 104 Ia. 423, 65 A. S. R. 475; Whitworth v. Lowell, 178 Mass. 43, 59 N. E.

760;Greene v. Stone, 54 N. J. Eq. 387, 55 A. S. R. 577; Harbeck v. Peepin, 145 N. Y. 70, 39 N. E. 722.

Thus the facts that one party thought that a certain conveyance of four acres along a section line included a certain area along such line affords no ground for reformation. Clarke v. Mossman, (Neb.) 78 N. W. 399. See, also, Greene v. Stone, (N. J.) 55 A. S. R. 577; Crane v. McCormick, (Cal.) 28 Pac. 222; 34 Cyc. 915, and cases cited.

"The other ground which will warrant the reformation of an instrument is where there is ignorance or mistake on one side, and fraud or inequitable conduct on the other." · 34 Cyc. 920, and cases cited.

Where there is a mistake on one side, if it is not mutual, in order to be ground for reformation, the fraud of the other party must be clearly shown. Snyder v. Ash, 30 N. Y. App. Div. 183, 51 N. Y. Supp. 772; Druker v. Goeres, (Wis.) 80 N. W. 91; Fullerton v. Des Moines, (Ia.) 115 N. W. 607; Weinhard v. Sommerville, (Wash.) 89 Pac. 490.

In the case at bar neither the proposed showing, the pleading, or the evidence adduced by defendant, showed or tended to show either mutual mistake, or mistake on one side and fraud on the other. Fraud is never presumed, and when relied upon as a ground for reformation it must be specifically pleaded and proven. Kurt v. Snyder, 30 Cal. 666; Carmack v. Prather, (Tex.) 74 S. W. 354; Greene v. Stone, (N. J. Eq.) 55 A. S. Rep. 577; Miller v. Gregory, 16 N. J. Eq. 274; French v. Griffin, 18 N. J. Eq. 652; Brandon Mfg. Co. v. Prime, 14 Blatchf. 372; 5 Enc. Pl. & Pr., 650.

Certainly the contention of respondent that there was mistake on his part coupled with fraud on the part of appellant is not sustained by that clear and convincing proof requisite in cases of this character, nor is there the slightest testimony showing fraud on appellant's part. As to the amount of proof requisite see: Rowley v. Flannelly, 30 N. J. Eq. 612; 1 Story's Equity Jurisprudence, Sec. 157; Cummins v. Bulgin, 37 N. J. Eq. 476; 15 Am. & Eng. Ency. of Law 650. See, also, Boyertown National Bank v. Hartman, (Penn.), 30 A. S. R. 759 at 761, where the instruction of the trial court to the jury is quoted and found correct. Southard v. Curley, 30 A. S. R. 642, and note.

As a matter of fact, a great deal more property than these lots and personal property were purchased from Slettebak at this time, and if this contract is to be enlarged to take in any part of it, except the part specifically described, it would, necessarily, take it all. As to this, see, Harris v. Scovel, (Mich.) 48 N. W. 173-174.

It was stipulated that the question as to what was the real agreement of the appellant and respondent should be determined by the jury. Rec. pages 154, 155. Under this stipulation appellant was certainly entitled to a finding upon this point by the jury under proper instructions as to the law, from the court, upon all matters submitted to them. And, we submit, that under this instruction as to "appurtenances" and the finding of the jury that all the property in controversy were "appurtenances," the jury must, necessarily, have found "that appellant agreed to transfer or turn over to the respondent all the property in controversy in this case, together with the real estate described in the contract for respondent's Pennington county land," and this on the basis that the written contract and the deed from appellant to respondent contained the full, true and only contract of the parties. For by the written contract and deed appellant agreed to transfer and did transfer everything "appurtenant" to the real estate therein described. The jury, by their findings Nos. 7 and 8 have found that all this property was "appurtenant" to the real estate conveyed; therefore, the jury were bound to find that appellant agreed to convey and did convey all this property to respondent; any other finding would have been inconsistent with their finding that all the property in controversy was "appurtenances." We apprehend, therefore, that finding No. 1, that appellant agreed to transfer all the property in controversy to respondent, in so far as respondent might contend that it was an independent finding that appellant, outside of the terms of the written contract, agreed to turn over this property to respondent, is wholly offset and destroyed by their finding that all the property was "appurtenant" to the real estate described; for, having found the property "appurtenant" the jury must find that appellant agreed to transfer it, under the written agreement alone, for that he did agree to transfer everything "appurtenant" to the

real estate was never disputed by him, or controverted in any manner.

In Reply.

It will be observed that we do not dispute the title of E. G. Edgerton, our landlord, but we do dispute the title of Michael McManus, the party who claims to have acquired title from Edgerton. This raises the question of the title of McManus and he would have to offer his deed to prove his title. This he could not do in justice court. The cases cited by respondent are mostly where the litigation was between the landlord and tenant, and not between the assignee of the landlord and the tenant.

The provisions found in our Justice Code relating to certifying actions to circuit court differ materially from those of other states.

In most states it is necessary to proceed with the trial and find out from the evidence whether the question of title is involved. We are unable to find that any other state has a statute similar to section 9 of our Justice Code.

No authority holds that where the establishment of title to real property by the introduction of deeds or other evidence is necessary that it does not involve the title to real property.

McManus claims that he is the assignee of Edgerton because he has succeeded to the title of Edgerton. We deny this, and it is necessary to determine the right of McManus in the property before he can recover.

Maloy claims lease for the year beginning January 15, 1912, hence it becomes necessary to determine his rights in the property before the case can be disposed of. This is a claim of title to real property. Our code divides property into two classes: Real or immovable property, and personal or movable property. Under the head of Estates in Real Property, section 241, Civil Code, mention is made of estates for years and estates at will. Our Civil Code then proceeds to give the particular kinds of personal property, sections 383 to 895. 1. Things in action. 2. Shipping. 3. Corporations. 4. Products of the mind. 5. Other kinds of personal property.

None of the cases cited by respondent aid us in the construction of section 9 of the Justice Code, because no similar section can be found in the statutes of other states.

The construction given to it in Murry v. Burris, by Tripp, C. J., is the only light we have on the subject, and this construction sustains our position.

*E. P. Wanzer,* for Respondent.

The defendant's contention at the trial was and now is:

First. That it was expressly agreed by and between the parties that the property in controversy was included and went in the deal to the defendant, regardless of whether it was personal property or a part of the real estate, and that a clause to that effect should have been inserted in the contract in order to obviate any question on that point.

Second. That regardless of whether there was any express agreement between the parties on that point or any agreement at all, that is, if the property in question had not been mentioned between them at all, it was of such a character and nature that it would all pass to the defendant under his deed as appurtenant to the real estate.

We think there was no abuse of discretion on the part of the trial court in granting the motion for leave to amend the answer on the showing made by defendant; that the proposed showing, if substantiated by the evidence, would entitle the defendant to a reformation of the contract. The amended answer drawn and served subsequent to the trial was of little or no use and certainly not misleading or prejudicial to plaintiff. The evidence bearing on the question of reformation, having all been offered and received without objection as to the sufficiency of the proposed showing, under the offer of proof, as stated upon the record. We contend, however, that the allegations of the amended answer are sufficient to admit of the evidence offered at the trial and that the evidence supports the verdict and the findings and show the defendant entitled to a reformation of the contract.

Appellant's contention that the only grounds for reformation of a contract is mutual mistake or fraud, is not supported by authority, only on the theory that acts such as are here shown on the part of the plaintiff amount to fraud.

If one of the parties to a contract is mistaken as to the matter and the other knows that he is and does not apprise him of it, the mistake, although it is a mistake of one of the parties only, is a subject of correction, because the case is one which

shows a mistake in one party and fraud in the other. Enc. Pl. & Prac. 18, 782; Wyche v. Green, 26 Ga. 415; Stevens v. Holman, 112 Calif. 345; Am. St. Rep., v. 53, p. 216.

"But a court of equity will correct a written contract where a mistake exists on the part of one of the parties and the other party is aware of his mistake, or where one party by his conduct or representations has led the other party into the mistake: Higgins v. Parsons, 65 Cal. 280, 3 Pac. 881; Deischer v. Price, 148 Ill. 383, 36 N. E. 105; Roszell v. Roszell, 109 Ind. 354, 10 N. E. 114; Williams v. Mamilton, 104 Iowa, 423, 65 Am. St. Rep. 475, 73 N. W. 1029; Goodenow v. Curtis, 18 Mich. 298; Crookston Imp. Co. v. Marshall, 57 Minn. 333, 47 Am. St. Rep. 612, 59 N. W. 294; Fritz v. Fritz, 94 Minn. 264, 102 N. W. 705; Sanford v. Gates, 21 Mont. 277, 53 Pac. 749; Husted v. Van Ness, 158 N. Y. 104, 52 N. E. 645; Jones v. Warren, 134 N. C. 390, 46 S. E. 740; Archer v. California Lumber Co., 24 Or. 341, 33 Pac. 526; McCormick, etc., Co. v. Woulph, 11 S. D. 252, 76 N. W. 939; McCormick v. Ratcliffe, (Tenn. Ch.) 64 S. W. 332; Kyle v. Fehley, 81 Wis. 67, 29 Am. St. Rep. 866, 51 N. W. 257; Home Ins. Co. v. Virginia-Carolina Chemical Co., 109 Fed. 681; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. Rep. 239, 35 L. Ed. 1063. This reformation will be granted where one party is buying a certain subject matter which the other party knows that he will not receive under the terms of the contract as written: Stevens v. Holman, 112 Cal. 345, 53 Am. St. Rep. 216, 44 Pac. 670. So, also reformation will be granted where the grantee knows that the grantor believes that a certain coal vein is excepted and reserved from the deed while in fact it is not: Cook v. Lison, 192 Pa. 19, 43 Atl. 389.

The undisputed evidence shows that when at Armour, looking at the property the plaintiff told defendant that he owned everything in the building except the goods on the shelves, which belonged to Mr. Ferguson, who was conducting a department store in the building at the time and that it all went in the deal. Having made this statement positively and clearly more than once to defendant at Armour, it is easy to understand how defendant believed that it all went in the deal at the time of executing the contract. It is also undisputed that plaintiff did not at any time before the execution of the contract, say to defendant that he

would reserve or keep the fixtures, relying solely, according to plaintiff's own testimony, on his statement to defendant that he would trade him his building and lots at Armour for his property on certain terms. That plaintiff intended that defendant should understand by this that it all went in the deal and well knew that defendant did so understand, was perfectly apparent to the jury. and court from his subsequent statements: "Lockhart thinks he's got those fixtures." "I've got a surprise for Lockhart, he thinks he is going to get those fixtures, but there is nothing said about it in the deed," and again: "Has Lockhart found out yet he is not going to get those fixtures" and his conduct shortly after returning to Armour in going into the store and breaking the cement away from the safe in which it was firmly embedded at the time Lockhart had inspected the property and was told by plaintiff that it all went in the deal. And again, in writing to Mr. J. E. Dilger, about the time of starting his suit, the letter Exhibit "I," saying: "Lockhart is going to give me a fight on the fixtures so be careful what you and Bill say to him, I may need you as a witness."

This was the same person to whom he had made the statements showing he knew the defendant had been deceived in regard to the fixtures.

Counsel for appellant argue that the clause in the contract lowing the description of the property "being the same property purchased from one R. Slettebak'' does not enlarge the description. Our contention upon the trial was that under this clause we should be permitted to show just what property was in fact meant to be included. It is undisputed that all of this property, excepting one or two items, was purchased by plaintiff from R. Slettebak, and that at the time of showing it to defendant, he was so told by plaintiff and the property pointed out to him. It, therefore, became one of the means of identification of the property.

The assignment of the lease was another circumstance calculated to cause the defendant to believe he was getting the property in controversy. Counsel argue that the $150.00 was rent of the building only because it merely described the real estate. The undisputed evidence shows, however, that the $150.00 was rental of the building and all of the property in controversy.

26—Vol. 30, S. D.

McCOY, P. J.    This is an action in replevin instituted by plaintiff to recover from defendant the possession of certain articles claimed by plaintiff to be personal property, consisting mostly of shelving, show cases, tables, etc., which were situated and had been used in a certain store building owned by defendant at the time of the commencement of this action in April, 1911.    The complaint is the ordinary form used in replevin, or claim and delivery, alleging that plaintiff is the owner of the property described therein, and that defendant wrongfully took said possession from plaintiff and now wrongfully witholds the same from plaintiff, and also alleging the value thereof and demanding judgment that plaintiff recover possession of said property from defendant, or the value thereof in case such delivery of possession could not be had, and for damages.    To this complaint defendant originally made answer denying plaintiff's ownership and right of possession to said propery, except as to a small portion thereof, denying that all said property was personal property, but alleging that a greater portion thereof was attached to the building in which the same was located as a part thereof, denying that he wrongfully took possession of said property, but alleging the fact to be that about October, 1910, he took peaceable possession thereof and ever since, to the commencement of this action, had been in the quiet and peaceable possession thereof; and defendant by way of answer further alleged that on October 20, 1910, plaintiff was the owner of certain lots in Armour, together with the property described in the complaint, and that at said time plaintiff and defendant exchanged properties, the defendant trading to plaintiff certain farm lands in Pennington county for the said real estate of plaintiff including all the property described in the complaint, excepting some small portion thereof, and that ever since said exchange of properties defendant has been the owner of said property described in the said complaint; that at the time of said exchange of properties one Ferguson was occupying the two-story brick building situated on said lots so traded by plaintiff to defendant in Armour, and in the possession, occupancy, and use of all said property mentioned in plaintiff's complaint under a lease in writing between plaintiff and said Ferguson, and was paying by virtue thereof to plaintiff $150 per month as rent for said real estate and said property described in the said complaint, and

that at the time of said exchange of properties the plaintiff sold, assigned, and transferred to defendant all his right, title, and interest in and to said lease, and that thereafter from October, 1910, to April, 1911, the expiration of said lease, said Ferguson paid to defendant the said monthly rental for said property. There was a special verdict and findings by the court by stipulation made in favor of defendant and judgment thereon rendered. Plaintiff appeals, alleging various errors.

[1] During the progress of the trial the court ruled that any conversation or other matters which led up to and culminated in the written contract made by plaintiff and defendant in relation to their said exchange of properties would not be admitted, but that the written contract alone must determine what property passed by the agreement and the rights of the parties. Defendant thereupon asked permission of the court to amend his answer by alleging that it was the agreement and understanding of both plaintiff and defendant at the time said contract was made that the property described in the complaint was to be transferred to, and became the property of, defendant as a part of the consideration for said exchange; and that defendant at the time said contract was drawn up and executed understood and believed that said property was included in the said contract and assignment of lease, and that at the time of the execution and delivery thereof plaintiff acted in bad faith with full knowledge that the instrument did not express the contract between plaintiff and defendant previously agreed upon, and well knew that defendant understood and believed that by the terms of said contract and assignment he was to receive title to all the said property mentioned in the complaint, and prayed judgment that said contract be reformed to include all said property described in plaintiff's complaint. Defendant also moved the court for a postponement of the trial for the purpose of preparing said amended answer and procuring his evidence, and also for the purpose of making his showing by affidavit on which to base his application to amend his answer and continue the case to procure the evidence of one Buell, of Rapid City, who drew the contract between said parties. The court denied the motion to continue on the ground that there was no showing by affidavit, as required by the rules of the court, but granted to defendant sufficient time to make such presentation by affidavit.

It was thereupon agreed between the parties in open court that defendant might make his showing for continuance and right to amend his answer by oral statement entered upon the record instead of by affidavit, in order to save time. Defendant then, in substance, stated that he would be able to show by the evidence of defendant and one Dilger, upon an application to reform said contract, that at the time plaintiff showed him the property which defendant subsequently traded for, that plaintiff showed him, and told him he was the owner of, the building, all furniture and fixtures therein, and everything except the goods upon the shelves, which belonged to Ferguson who occupied the building and was then conducting a department store therein; and that it all went in the deal at a valuation of something like $35,000; and that it was all included in the trade, and that at the time the contract was made defendant believed and understood that the property he was getting included all the property in dispute. The defendant also stated that he expected to prove by one C. J. Buell in whose office the contract was drawn, and at which time the assignment of lease was made, that he, Buell, stated to defendant, in the presence of plaintiff, that a bill of sale for the property in dispute was not necessary, as the assignment of the lease was sufficient to carry with it title to the property involved in this action, they being fixtures in the store building. The plaintiff then objected to the amendment of said answer as indicated by said statement, for the reason that the application to amend came too late; that defendant knew all said facts prior to the beginning of this suit; that there was no showing on the part of defendant that there was any fraud on the part of plaintiff or any mutual mistake, between plaintiff and defendant; that part of the proposed proof is of facts which occurred after the contract was drawn; that there was no showing of diligence on the part of defendant, and the proposed facts do not entitle him to the relief asked, either by way of amendment or continuance. These objections were overruled, and exception duly taken thereto. Counsel for plaintiff then admitted for the purposes of the trial that said Buell, if present, would testify as stated, by defendant. Defendant was permitted to amend his answer as indicated by said showing, and the trial then proceeded without further objection as to the sufficiency of the amended answer as a pleading in the case. Plaintiff

now urges as error the ruling of the court in permitting de-
fendant to so amend his answer on the ground that the application
came too late, and that the showing was insufficient to permit such
an answer. We have been unable to find in the record any
demurrer to said amended answer on the ground that the same
did not contain a statement of facts sufficient to constitute a
defense. We are of the opinion that the learned trial court did
not abuse his discretion in permitting such amendment. Such
amendments, in the furtherance of justice, are permissible and
within the discretion of the trial court. We are also of the opinion
that the showing was sufficient to warrant such amendment.

[2] The jury found, and the court adopted the finding, that
the plaintiff agreed to transfer and turn over said property de-
scribed in the complaint, together with the said real estate, to de-
fendant, in exchange for defendant's said land. The plaintiff' con-
tends that the evidence was insufficient to justify such finding.
We are of the opinion that the evidence was amply sufficient in
such particular. It will serve no useful purpose to incorporate
such testimony herein. The court also found that the written con-
tract as actually made by said parties did not in fact express the
intention and agreement of both parties thereto, in that it directly
made no mention of the property in question therein, that plaintiff
acted in bad faith with full knowledge that the said contract did
not express the intention of said parties as previously agreed upon,
and plaintiff well knew that defendant understood and believed
that by the terms of said contract and the assignment of said lease
he was to receive title to said property in question, described
in the complaint; and the court further found as a conclusion of
law that the said contract should be reformed so as to include
therein the said property described in the complaint. It is urged
that the evidence is insufficient to justify such findings, and that
the same are contrary to the law. We are of the opinion that
plaintiff's contentions in this regard are not well taken; that the
evident justifies the findings of fact, and the law justifies the con-
clusion.

[3] It is the contention of appellant that the evidence fails to
show that the mistake was mutual, that it was a unilateral mis-
take for which equity will not reform a contract; that, while de-
fendant was mistaken, there was no mistake on the part of plain-

tiff. There is testimony in the record to the effect that defendant was told and informed in the presence of plaintiff at the time the contract was drawn up that a bill of sale of the property mentioned in the complaint was not necessary, as the same was covered by the contract, deed, and assignment of lease. If this were true, and for the purposes of this decision it must be taken as true, because the findings of the court and jury settle whatever conflict there was in the evidence, then it constituted mistake on the part of defendant, and, if plaintiff then knew that said property mentioned in the complaint was not covered by said lease and contract, then it constituted fraud and bad faith on his part. If he did not know it, then it constituted a mistake on his part also. A contract is reformable when by the mistake of one party and the fraud of the other there is omitted therefrom property which it was agreed should be transferred thereby. McCormick v. Woulph, 11 S. D. 252, 76 N. W. 939; Cox v. Beard, 75 Kan. 369, 89 Pac. 671. In this last-cited case the Supreme Court of Kansas said: "It is contended that the deed is not reformable because the minds of the parties did not actually meet; that, while there was misapprehension and mistake on the part of the grantee as to the extent of the land conveyed, the mistake was not mutual, as the grantors did not intend to convey more than the lots described in the deed, and they insist that a unilateral mistake is a ground for rescission, but not for reformation. The equitable remedy of reformation is not confined to cases of mutual mistakes. It is true that when mistakes, unmixed with fraud, are a basis of the relief asked it must be a mistake common to both parties; but it is well settled that the remedy is available where there is a mistake on one side accompanied by fraud or other inequitable conduct on the other. It is argued by the grantors that they at least did not intend to convey more than was described, and that, therefore, a reformation will effect what was not intended and will amount to the making of a new contract. According to the testimony, it was the intention of Mrs. Beard to buy and the express purposes of the Coxes to sell and convey the entire tract, and, having led the grantee to believe the deed would convey it, they cannot well insist that equitable relief should be barred, because they did not mean what they said, and that their expressed intention was not their honest intention. They knew the correct

description of the land sold, and that the description employed in the deed did not cover or convey it. They also knew that the grantee understood that she was buying all the tract within the designated boundaries, and that it fronted on a street, as the walks and other improvements indicated. They led the grantee to believe that the description in the deed conveyed all that was purchased, and took advantage of the mistake into which she was led by inducing her to accept the deed for a less quantity than was agreed to be conveyed and for which a consideration was paid. The case comes fairly within the well-established rule that a deed is reformable when, by the mistake of one party and the fraud of another, there is omitted from it land which it was stipulated should be conveyed." Then follows a long citation of authorities, including McCormick v. Woulph, supra. In principle this case is on "all fours" with the case at bar. The evidence shows that plaintiff expressly agreed and necessarily intended to transfer to defendant the property described in the complaint as a part of the trade and consideration for the exchange of properties; that when the contract, deed, and assignment of lease were being drawn up defendant mentioned the fact that a bill of sale should be made for the property which is the subject of this action, and that defendant was informed, in the presence of plaintiff, that a bill of sale was not necessary, as the deed and assignment would transfer such property to defendant without a bill of sale. If plaintiff then thought the contract, deed, and assignment of lease were not sufficient to transfer said property described in the complaint to defendant, it was his plain duty to speak out and say so. It was bad faith and fraudulent concealment on his part not to rightly inform defendant, or, at least, it was such inequitable conduct on his part that would render a reformation of said contract proper. The greater portion of the property described in the complaint was fixtures and passed by said deeds as a part of the real estate, but it is questionable as to some portions of said property in dispute being fixtures, and under the evidence in this case it is immaterial whether the whole of said property were fixtures or not, as the same, under the evidence, and under the contract, as reformed, would pass to and become the property of defendant.

Some of the assignments of error relate to the ruling of the court in overruling and sustaining objections to testimony and to

certain instructions to the jury, all of which have been considered, and we are of the opinion that no prejudicial error exists therein.

[4]· One of appellant's assignments and specifications of error is "that the court's finding of fact No. 5 is wholly unsupported by the evidence, and is contrary thereto, in that the undisputed evidence shows that defendant was never in the possession of the property in litigation prior to the commencement of this action. but that it was at all times in the possession of either plaintiff or D. A. Ferguson." If this statement were true, "that defendant was never in possession of said property in litigation prior to the commencement of this action," we are at a loss to understand why or how this action in replevin, or claim and delivery, might or could be sustained at all. It is one of the fundamental and elementary propositions that the action of replevin will not lie at all where the defendant was not in the actual or constructive possession of the property sought to be replevined at the time of the commencement of the action. Timp v. Dockham, 32 Wis. 146; Longerbeam v. Huston, 20 S. D. 254, 105 N. W. 743; 1 Wait's Prac. 716. If we were to take plaintiff at his word, no matter what the other evidence in the case might be, defendant would be entitled to judgment in any event, and which of itself would necessarily require an affirmance of the judgment. Plaintiff evidently overlooked the complaint in this action, verified on plaintiff's oath, to the effect that the defendant wrongfully took possession of said property and withholds the same from plaintiff, and that prior to the commencement of the action plaintiff demanded of defendant the possession of said property, but that defendant refused to deliver the same to plaintiff, and still witholds and detains the same. The only allegation of the complaint, aside from value, that was admitted by defendant, is that defendant was in possession of the property in dispute at the commencement of the action. There was ample evidence that defendant was in actual possession and had been since October, 1910.

After careful consideration of each and every assignment of error, the judgment appealed from is affirmed.